UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARINO JAIR RODRIGUEZ, et al., <br><br> Plaintiffs, <br><br> v. <br><br> SANTA CLARA VALLEY TRANSPORTATION AUTHORITY, et al., <br><br> Defendants. | Case No. 23-cv-01379-HSG <br><br> **ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AS TO THE FEDERAL CLAIM, DIRECTING BRIEFING, AND SETTING A CASE MANAGEMENT CONFERENCE** <br><br> Re: Dkt. No. 62 |

Pending before the Court is Defendant Santa Clara Valley Transit Authority ("VTA")'s motion for summary judgment, Dkt. No. 62 ("Mot."), 84 ("Reply"). Plaintiffs oppose this motion, Dkt. No. 80 ("Opp.").[1] For the reasons discussed below, the Court (1) **DENIES** Defendant's motion for summary judgment as to Plaintiffs' federal claim, (2) **DIRECTS** the parties to file supplemental briefing, and (3) **SETS** a further case management conference.[2]

**I.   BACKGROUND**

In January 2022, VTA, a special district public transportation provider operating in Santa Clara County, implemented a Covid-19 vaccine policy. The policy sought to "help prevent infection and transmission of COVID-19 within the workplace, at VTA facilities, and to members of the public who depend on VTA services." Dkt. No. 62-4, Ex. 6. The policy required "[a]ll employees [to] be fully vaccinated against COVID-19, or have received an exemption . . . by no later than April 29, 2022." Dkt. No. 62-4, Ex. 5, 6. The policy also included a religious

---

[1] In April 2023, Shaw Consulting, Inc. was voluntarily dismissed as a party in this action. *See* Dkt. No. 11.
[2] The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b).

exemption for employees who demonstrated a "sincerely held religious belief." *Id*.

Requests for exemptions followed a standard process. Employees who expressed an interest in a religious exemption received an initial exemption request form, which asked the employees to describe how their "sincerely held religious belief, practice, or observance conflicts with the requirement that you receive a Covid-19 vaccination." *See* Dkt. No. 66-1, Ex. C; Dkt. No. 62-4, Ex. 47. At the direction of the VTA committee evaluating exemption requests, most of these employees received a second clarification form with specific follow-up questions. Dkt. No. 66-1, Ex. C; Dkt. No. 62-4, Ex. 48. The committee evaluated employees' responses on both the initial response form and the clarification form, using seven criteria to assess whether the employees established a sincere religious belief, practice, or observance in conflict with the VTA's vaccine requirement. Dkt. No. 66-1, Ex. D, F.[3]

In total, 125 VTA employees completed applications for religious exemptions. The VTA granted 68 of these religious exemptions and denied the remaining 57 requests. Mot. at 7. After the April 2022 vaccination deadline passed, all unvaccinated, non-exempt employees received notices of proposed termination. In July 2022, the VTA revised these notices, changing them to notices of a 30-day unpaid suspension. Dkt. No. 66-1, Ex. I. In November 2022, the VTA ended its Covid-19 vaccination mandate. Ultimately, no VTA employees were suspended or terminated based on the VTA's vaccination policy. The 12 plaintiffs in this action are current and former VTA employees whose requests for religious exemptions were denied.[4]

Plaintiffs brought eight claims against VTA—a claim under 42 U.S.C. § 1983 for violations of the Free Exercise and Establishment Clauses of the First Amendment and seven state law claims under California law. *See* Dkt. No. 28 ("Compl."). Plaintiffs now move for partial summary judgment on multiple state law claims. VTA separately moves for summary judgment on Plaintiffs' section 1983 claim and on several of Plaintiffs' state law claims.

---

[3] VTA asserts that these seven criteria are not the "only areas" that VTA considered and that existing discovery does not indicate "how VTA ultimately reviewed these seven 'areas.'" Reply at 12. At the summary judgment stage, however, the Court must view the evidence in the light most favorable to the nonmoving party and draw all inferences in that party's favor. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987).
[4] 11 Plaintiffs received a suspension notice and, later, a notice of termination. Dkt. No 77 at 10.

## II. DISCUSSION

### A. Legal Standard

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a dispute is "genuine" if there is evidence in the record sufficient for a reasonable trier of fact to decide in favor of the nonmoving party. *Id*. But in deciding if a dispute is genuine, the court must view the inferences reasonably drawn from the materials in the record in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986), and "may not weigh the evidence or make credibility determinations," *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), *overruled on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884–85 (9th Cir. 2008).

"If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1103 (9th Cir. 2000). In doing so, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. A nonmoving party must also "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). If a nonmoving party fails to produce evidence that supports its claim or defense, courts enter summary judgment in favor of the movant. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

### B. Plaintiffs' Federal Claim

"All § 1983 claims must be premised on a constitutional violation." *Nurre v. Whitehead*, 580 F.3d 1087, 1092 (9th Cir. 2009). Here, Plaintiffs allege two such violations. Plaintiffs first allege that VTA "imposed a substantial burden on Plaintiffs' religious beliefs" in violation of the First Amendment's Free Exercise Clause when VTA "den[ied] their requests for religious accommodation, and subsequently threaten[ed] them with suspension and termination for exercising their religious beliefs not to receive the Covid-19 vaccine." Compl. at 13. Plaintiffs

3

1  next allege that VTA "violated the most basic requirement of the First Amendment's
2  Establishment Clause by preferring some religious beliefs over others." Compl. at 14.  VTA
3  moves for summary judgment on Plaintiffs' federal claim as a whole, arguing that "VTA's policy
4  was valid, neutral and applicable to all employees and VTA's application of the policy to
5  Plaintiffs was rationally related to a legitimate governmental purpose, *i.e.* preventing the spread of
6  a deadly virus." Mot. at 7, 34–39; Reply at 10.  For the reasons set forth below, the Court confines
7  its analysis to the alleged violation of Plaintiffs' rights under the Free Exercise Clause.

### i. Alleged Violation of Plaintiffs' Free Exercise Rights

The Free Exercise Clause of the First Amendment states that "Congress shall make no law. . . prohibiting the free exercise [of religion]." U.S. Const. amend. I.  However, "the right of free exercise does not relieve an individual of the obligation to comply with a 'valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes).'" *Emp. Div., Dep't of Hum. Res. of Oregon v. Smith*, 494 U.S. 872, 879 (1990) (quoting *United States v. Lee,* 455 U.S. 252, 263, n. 3 (1982)).  *See Fulton v. City of Philadelphia, Pennsylvania*, 593 U.S. 522, 533 (2021) ("[L]aws incidentally burdening religion are ordinarily not subject to strict scrutiny under the Free Exercise Clause so long as they are neutral and generally applicable.").  "If a rule is both neutral and generally applicable, it is subject to rational basis review in which the government action must be 'rationally related to a legitimate governmental purpose.' If a rule is either non-neutral or not generally applicable, then it is subject to strict scrutiny and must be 'narrowly tailored' to serve a 'compelling' state interest." *UnifySCC v. Cody*, No. 22-CV-01019-BLF, 2022 WL 2357068, at *5 (N.D. Cal. June 30, 2022) (first quoting *Stormans, Inc. v. Wiseman*, 794 F.3d 1064, 1084 (9th Cir. 2015); and then quoting *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 525 (2022)).

The Court confronts a threshold issue: whether the VTA policy is subject to rational basis review or strict scrutiny.  Since this issue's resolution affects the merits of Plaintiffs' federal claim and, by extension, whether the Court should exercise supplemental jurisdiction over Plaintiffs' state law claims, the Court declines to address the state law claims at this time.  Instead, the Court rules only on VTA's motion for summary judgment as to Plaintiffs' federal claim based on an

alleged Free Exercise Clause violation.

### a. Neutrality

Although "the tests for [n]eutrality and general applicability are interrelated," the Court must "consider each criterion separately." *Stormans*, 794 F.3d at 1076 (internal citation and quotations omitted). The Court first addresses whether VTA's vaccine policy was both facially and operationally neutral. *See id*. "[T]he minimum requirement of neutrality is that a law not discriminate on its face. A law lacks facial neutrality if it refers to a religious practice without a secular meaning discernable from the language or context." *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah.*, 508 U.S. 520, 533 (1993). The Ninth Circuit instructs that vaccine mandates that omit "any reference to religion or 'a religious practice without a secular meaning discernable from the language or context'" are facially neutral. *Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1177 (9th Cir. 2021) (quoting *Church of Lukumi*, 508 U.S. at 533); *see also Stormans*, 794 F.3d at 1076 ("Because the rules at issue here make no reference to any religious practice, conduct, belief, or motivation, they are facially neutral."). And other circuit courts have held that "COVID-19 vaccination requirements [are] facially neutral when they apply to an entire category (i.e., all employees) and do[ ] not single out employees who decline vaccination on religious grounds." *UnifySCC*, 2022 WL 2357068, at *6 (internal citation and quotations omitted); *see We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 281 (2d Cir. 2021); *Kane v. De Blasio*, 19 F.4th 152, 163 (2d Cir. 2021); *Spivack v. City of Philadelphia*, 109 F.4th 158, 168 (3d Cir. 2024).

Even drawing all reasonable inferences in Plaintiffs' favor, there is no genuine dispute of material fact as to whether VTA's policy was facially neutral. The policy, which required "all employees . . . [to] be fully vaccinated against COVID-19, or have received an exemption . . . by no later than April 29, 2022," imposed the same requirements on all employees. Dkt. No. 62-4, Ex. 6. And the record does not suggest that the policy, on its face, singled out any employees who sought to decline the vaccination based on their religious beliefs. Instead, the policy "specifically *protect*[ed] religiously motivated conduct" by enabling employees with religious objections to apply for exemptions from the mandate. *Stormans*, 794 F.3d at 1076 (emphasis in original). Plaintiffs assert that the policy is not neutral because it provides religious exemptions. Opp. at 41.

5

However, "[t]he existence of religious exemptions does not undermine facial neutrality." *UnifySCC*, 2022 WL 2357068, at *6. Accordingly, neither the VTA mandate nor the exemption process undermines facial neutrality.

The Court must also address whether the policy is "operationally neutral." *Stormans*, 794 F.3d at 1076. A policy may be facially neutral but nevertheless "target[] religious conduct for distinctive treatment." *Church of Lukumi*, 508 U.S. at 534. Such "attempt[s] to target religious practices through careful legislative drafting" are impermissible. *Stormans*, 794 F.3d at 1076. Although Plaintiffs state that the "policy was neither neutral (on its face or *in application*)," they do not substantiate this assertion in their briefing or, more importantly, with citations to the record. Opp. at 39 (emphasis added). It is not the "task . . . of the district court to scour the record in search of a genuine issue of triable fact . . . . ['The nonmoving party's] burden to respond is really an opportunity to assist the court in understanding the facts. But if the nonmoving party fails to discharge that burden-for example, by remaining silent-its opportunity is waived and its case wagered.'" *Keenan*, 91 F.3d at 1279 (quoting *Guarino v. Brookfield Township Trustees,* 980 F.2d 399, 405 (6th Cir. 1992)). Plaintiffs have not established a genuine issue of fact as to the policy's neutrality.

### b. General Applicability

The Court next considers whether the policy is generally applicable. "Even if a government policy is neutral, it must also be generally applicable to avoid strict scrutiny." *Spivack*, 109 F.4th at 171. "[A] government policy will fail the general applicability requirement if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way, or if it provides a mechanism for individualized exemptions." *Bacon v. Woodward*, 104 F.4th 744, 751 (9th Cir. 2024) (quoting *Kennedy*, 597 U.S. at 526). Plaintiffs argue that the VTA policy "is not generally applicable because 'it invites the government to consider the particular reasons for a person's conduct by providing a mechanism for individualized exemptions.'" Opp. at 39 (quoting *Fulton*, 593 U.S. at 533).

Although "[t]he mere existence of an exemption that affords some minimal governmental discretion does not destroy a law's general applicability," *Stormans*, 794 F.3d at 1082, a "formal

1    system of entirely discretionary exceptions" does violate the general applicability requirement.

2    *Fulton*, 593 U.S. at 536.[5]  "What makes a system of individualized exemptions suspicious is the

3    possibility that certain violations may be condoned when they occur for secular reasons but not

4    when they occur for religious reasons." *Stormans*, 794 F.3d at 1082 (quoting *Lighthouse Inst. for*

5    *Evangelism, Inc. v. City of Long Branch*, 510 F.3d 253, 276 (3d Cir. 2007)). As the Supreme

6    Court recently instructed, an exemption process merits strict scrutiny when it "invites" one

7    individual to exercise "sole discretion" in determining "which reasons for not complying with the

8    policy are worthy of solicitude." *Fulton*, 593 U.S. at 537.

9        Based on the record and briefing presently before it, the Court concludes that a genuine

10   dispute of material facts exists as to the policy's general applicability. The VTA evaluation

11   committee implemented a standardized procedure to collect information from employees and then

12   used various criteria to determine whether the employee "attested to a sincerely held religious

13   belief that conflicted with being vaccinated for COVID-19." Dkt. No. 79-2; Dkt. No. 79-3, Ex. B,

14   C.[6] The parties have not directed the Court to any place in the record that shows how these

15   criteria were developed and weighed, how they were assessed, or exactly how the evaluation

16   committee reached its decisions. Accordingly, the facts of this case differ from those in which

17   vaccine mandate policies have been found generally applicable at a pretrial stage. *Cf. Chavez*,

18   2024 WL 3334741, at *4 (finding that the exemption review process, which was based on EEOC

19   guidance and "hewed to statutorily imposed accommodation obligations under FEHA and Title

20   VII," did not involve "vague grants of unfettered discretion"); *UnifySCC*, 2022 WL 2357068, at

21   *8 (finding a mandate generally applicable when the "[c]ounty d[id] not exercise any discretion in

22   granting a religious exemption once it determine[d] that the exemption [wa]s sought for a religious

23   (rather than a non-religious) reason"); *We The Patriots USA, Inc*, 17 F.4th at 289 (upholding a

---

[5] Exemptions that "create a regime of unfettered discretion that would permit discriminatory treatment of religion or religiously motivated conduct," are impermissible, while a "limited" inquiry "tied directly to limited, particularized, business-related, objective criteria" likely establishes general applicability. *Stormans*, 794 F.3d at 1082; *see Chavez*, 2024 WL 3334741, at *3–4; *UnifySCC*, 2022 WL 2357068, at *7.

[6] Specifically, VTA appears to have focused on its view of the internal consistency of employees' statements, and sought to assess whether there was a demonstrated connection between an employee's religious practice and their vaccine objection. *See* Dkt. No. 79-3, Ex. C.

policy that "afford[ed] no meaningful discretion to the State").

Although the VTA's exemption review process did not involve the entirely unfettered discretion that the Supreme Court rejected in *Fulton*, a reasonable factfinder could conclude that this process contained enough individualized discretion to "permit discriminatory treatment of religion or religiously motivated conduct." *Stormans*, 794 F.3d at 1082. Plaintiffs point to evidence in the record supporting that conclusion. For example, deposition testimony and documents suggest that the committee evaluated the sincerity of applicants' religious beliefs based on the perceived consistency of applicants' statements and "proof of consistent adherence over [a] long period of time." Dkt. No. 80-1, Ex. C, M. The committee's method for assessing "consistency" is not clear to the Court, but the record suggests that at least some applicants were denied exemptions because they objected to certain vaccines and not others. Dkt. No. 80-1, Ex. C, M; *see* Dkt. No. 79-3, Ex. C. A reasonable factfinder could conclude that this approach "passe[d] judgment upon or presuppose[d] the illegitimacy of religious beliefs and practices." *Masterpiece Cakeshop v. Colorado C.R. Comm'n*, 584 U.S. 617, 638 (2018). *See Does 1-11 v. Bd. of Regents of Univ. of Colorado*, 100 F.4th 1251, 1269 (10th Cir. 2024) (holding that a vaccine mandate violated the Free Exercise Clause when it "discriminate[d] . . . against religious belief[s] that are opposed to the COVID-19 vaccine, but not necessarily opposed to all immunizations"). Moreover, when applicants sought exemptions on the ground that vaccines contained the "mark of the beast," one internal VTA email asked if the committee "could just go straight to deny[ing] the exemption?" Dkt. No. 80-1, Ex. C, D. A reasonable factfinder could conclude that such correspondence evinces an "intoleran[ce] of religious beliefs" that is fatal to generally applicability. *Fulton*, 593 U.S. at 533.

Conversely, a reasonable factfinder could conclude that the exemption process was "tied directly to limited, particularized, business-related, objective criteria" such that it was generally applicable. *Stormans*, 794 F.3d at 1082. Unlike *Fulton*, no individual here exercised "sole discretion." 593 U.S. at 535. Instead, the committee rendered decisions as a group based on set criteria. *See* Dkt. No. 79-3, Ex. B, C. Members of the VTA committee stated that they "treat[ed] and handle[d] every single request consistently" to ensure they did not "favor one [request] over

8

the other." Dkt. No. 79-3, Ex. B, C. These individuals also attested that they were not "trying to judge someone's religious beliefs." *Id.* And evidence in the record suggests that the committee frequently denied exemptions for the religiously-neutral reason that applicants did not answer the committee's questions or participate in the committee's process. *Id.* The "inevitable exercise of some discretion" in an exemption process is "qualitatively different" from the "formal system of entirely discretionary exceptions" in *Fulton*. *Chavez*, 2024 WL 3334741, at *4; *Fulton*, 593 U.S. at 536. A reasonable jury could find that the VTA committee exercised a degree of discretion that preserved the policy's general applicability.

Drawing all reasonable inferences in favor of Plaintiffs, there is a genuine dispute of material fact as to the discretion that the VTA committee exercised and, by extension, to the policy's general applicability.[7] Accordingly, the Court denies VTA's motion for summary judgment as to Plaintiffs' federal claim arising under the Free Exercise Clause.

## C. NEXT STEPS

Since genuine disputes of material fact muddy the general applicability analysis in this case, the proper standard of review that applies to the VTA policy remains unclear. Equally unclear is how the Court should proceed in determining the correct standard. The policy would likely survive rational basis review, but it is unlikely to withstand strict scrutiny. *Compare Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 18 (2020) ("Stemming the spread of COVID–19 is unquestionably a compelling interest."), *and Slidewaters LLC v. Washington State Dep't of Lab. & Indus.*, 4 F.4th 747, 758 (9th Cir. 2021) ("There is a legitimate state interest in preventing the spread of COVID-19, a deadly contagious disease."), *with Does 1-11*, 100 F.4th at 1273 (finding that a policy denying "exemptions for religious beliefs the [state] deems inconsistent" did not satisfy strict scrutiny), *and Kane*, 19 F.4th at 169 (finding that a policy denying religious exemptions based on various criteria, including "whether an applicant can produce a letter from a

---

[7] Although "[a] law also lacks general applicability if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way," Plaintiffs do not argue that the VTA policy was not generally applicable on this ground. Therefore, the Court does not address this issue. *Fulton*, 593 U.S. at 534.

religious official," did not survive strict scrutiny).  Since the standard of review is likely dispositive in resolving Plaintiffs' federal claim, the standard also impacts whether the Court would exercise supplemental jurisdiction over Plaintiffs' remaining state-law claims, because it would do so only if some federal claim survives.

Accordingly, the Court directs the parties to indicate their positions as to how the factual disputes relevant to determining the standard of review should be resolved.  At least one circuit court has suggested that a jury must decide this issue.  In *Spivack v. City of Philadelphia*, the Third Circuit instructed that a jury must resolve "two disputes of material fact that affect the neutrality and general-applicability analyses" so as to "determine which standard [of review] applies."  109 F.4th at 167–68.  The Third Circuit did not address how a jury would resolve these disputes, or whether that same jury would then apply the selected standard (as opposed to, for example, answering special interrogatories which the Court would then take as proven in determining and applying the standard of review).

The Court directs the parties to file simultaneous supplemental briefs on these issues.  Among other options, the parties should consider (1) a jury trial involving special interrogatories and (2) an evidentiary hearing at which the Court would weigh the evidence and resolve the relevant disputes of fact.

### i.     Alleged Establishment Clause Violation

Plaintiffs allege that VTA "violated the most basic requirement of the First Amendment's Establishment Clause by preferring some religious beliefs over others."  Compl. at 14.  Even though Plaintiffs' federal claim rests on two alleged constitutional violations, VTA's motion did not address the alleged Establishment Clause violation in any detail, and neither party addressed the Supreme Court's recent decision in *Kennedy v. Bremerton School District.*  That decision instructs courts to interpret the Establishment Clause "by reference to historical practices and understandings" through "[a]n analysis focused on original meaning and history."  *Kennedy*, 597 U.S. at 535–36; *see Hunter v. U.S. Dep't of Educ.*, 115 F.4th 955, 963 (9th Cir. 2024).

The parties' supplemental briefing should clarify the parties' understanding of how to treat the Establishment Clause allegations.  Specifically, the parties should address the interrelatedness

of these alleged violations—does the success or failure of Plaintiffs' federal claim based on an alleged Free Exercise violation necessarily determine the viability of Plaintiffs' federal claim based on an alleged Establishment Clause violation? And does the standard of review applied to Plaintiffs' federal claim under a Free Exercise theory have any bearing on the federal claim premised on an Establishment Clause violation? Given the unusual structuring of Plaintiffs' claims, the parties need to provide further clarity on these issues.

## III. CONCLUSION

The Court **DENIES** VTA's motion for summary judgment as to Plaintiffs' federal claim. The Court **DIRECTS** the parties to each file simultaneous supplemental briefs of no more than 10 pages by November 19, 2024, addressing (1) how the applicable standard of review should be determined and (2) how the Court should treat Plaintiffs' federal claim arising under the Establishment Clause. These briefs must not re-argue any issues the Court has already decided in this order (in particular, its denial of Defendant's motion for summary judgment). No responsive briefs are permitted. The Court **CONVERTS** the pre-trial conference currently set for November 26, 2024, to a further case management conference. The hearing will be held by Public Zoom Webinar at 2:00 p.m. All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/hsg. All attorneys and pro se litigants appearing for the case management conference are required to join at least 15 minutes before the hearing to check in with the courtroom deputy and test internet, video, and audio capabilities.

**IT IS SO ORDERED.**

Dated: 11/12/2024

HAYWOOD S. GILLIAM, JR.
United States District Judge