UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

United States District Court
Northern District of California

| | |
|---|---|
| MARINO JAIR RODRIGUEZ, et al.,<br>Plaintiffs,<br>v.<br>SANTA CLARA VALLEY TRANSPORTATION AUTHORITY, et al.,<br>Defendants. | Case No. 23-cv-01379-HSG<br>**ORDER GRANTING IN PART AND DENYING IN PART SUPPLEMENTAL MOTIONS FOR SUMMARY JUDGMENT**<br>Re: Dkt. No. 143, 145 |

Pending before the Court are the supplemental motions for summary judgment submitted by Plaintiffs and Defendant Santa Clara Valley Transit Authority ("VTA"). Dkt. Nos. 143, 145. The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. L.R. 7-1(b). The Court **GRANTS IN PART** and **DENIES IN PART** the motions.

## I. BACKGROUND

The Court detailed the factual background underlying this case in a prior order. *See Rodriguez v. Santa Clara Valley Transp. Auth.*, No. 23-CV-01379-HSG, 2024 WL 4778049, at *1 (N.D. Cal. Nov. 12, 2024) ("*Rodriguez I*"). Relevant here, VTA is a special district public transportation provider operating in Santa Clara County. *Id.* In January 2022, VTA implemented a vaccine policy that sought to "help prevent infection and transmission of COVID-19 within the workplace, at VTA facilities, and to members of the public who depend on VTA services." Dkt. No. 62-4, Ex. 6. The policy required all VTA employees to be "fully vaccinated against COVID-19, or have received an exemption . . . by no later than April 29, 2022." Dkt. No. 62-4, Exs. 5, 6.

The policy allowed employees who demonstrated a "sincerely held religious belief" to seek an exemption from the vaccination requirement. *Id.* To do so, an employee would complete an

initial exemption request form, which asked employees to describe in their own words how their "sincerely held religious belief, practice, or observance conflicts with the requirement that you receive a Covid-19 vaccination." *See* Dkt. No. 62-2, Ex. C; Dkt. No. 62-4, Ex. 47. A VTA committee evaluating exemption requests directed most of these employees to complete a clarification form. Dkt. No. 62-2, Ex. C; Dkt. No. 62-4, Ex. 48. The committee evaluated employees' responses on both the initial response form and the clarification form, using several criteria to assess whether the employee established a sincere religious belief, practice, or observance in conflict with the VTA's vaccine requirement. Dkt. No. 62-2, Ex. D, F. Over one hundred VTA employees submitted religious exemption requests, the majority of which were granted. Dkt. No. 62 at 7. A subset of employees whose exemption requests were denied sued, alleging violations of their rights under the First Amendment and California law.

The parties initially filed cross-motions for summary judgment in 2024. Dkt. Nos. 62, 77. With respect to Plaintiffs' federal claims, the Court found there was no genuine dispute of material fact that the VTA's vaccination policy was facially and operationally neutral. *Rodriguez I*, 2024 WL 4778049, at *3–*4. But the Court concluded that "there is a genuine dispute of material fact as to the discretion that the VTA committee exercised and, by extension, to the policy's general applicability." *Id.* at *4. The Court concluded that these issues of material fact would impact the standard of review for Plaintiffs' federal claim, and therefore declined to address the VTA's motion for summary judgment as to Plaintiffs' state law claims, as well as Plaintiffs' cross-motion for summary judgment. *Id.* at *5; *see also* Dkt. No. 109 at 2. The Court referred the parties to a magistrate judge settlement conference before Judge Beeler. Dkt. No. 101. Although settlement efforts were successful with respect to five of the twelve original Plaintiffs, seven remain in the case.[1] After resuming litigation, at the Court's direction the parties filed supplemental cross-motions for partial summary judgment. Dkt. Nos. 143 ("Mot."), 165 ("Opp."), 183 ("Reply"), 145 ("Cross Mot."), 166 ("Cross Opp."), 182 ("Cross Reply").

[1] Remaining Plaintiffs are John Rolland, Robert Bircher, Michael Poythress, William Kennedy, Marino Rodriguez, Elizabeth Sanchez and Jennifer Mena.

## II. LEGAL STANDARD

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a dispute is "genuine" if there is evidence in the record sufficient for a reasonable trier of fact to decide in favor of the nonmoving party. *Id*. But in deciding if a dispute is genuine, the court must view the inferences reasonably drawn from the materials in the record in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986), and "may not weigh the evidence or make credibility determinations," *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), *overruled on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884–85 (9th Cir. 2008).

"If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1103 (9th Cir. 2000). In doing so, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. A nonmoving party must also "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). If a nonmoving party fails to produce evidence that supports its claim or defense, courts enter summary judgment in favor of the movant. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## III. DISCUSSION

### A. Free Exercise Claims

The Free Exercise Clause provides that "Congress shall make no law . . . prohibiting the free exercise" of religion. U.S. Const. amend. I. "[A] plaintiff may carry the burden of proving a free exercise violation in various ways, including by showing that a government entity has burdened his sincere religious practice pursuant to a policy that is not 'neutral' or 'generally applicable.'" *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 525 (2022). But "[t]he right of free exercise does not relieve an individual of the obligation to comply with a 'valid and neutral law of

general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes).'" *Emp. Div., Dep't of Hum. Res. of Oregon v. Smith*, 494 U.S. 872, 879 (1990)).[2] Neutral and generally applicable rules are subject to rational basis review under which the state action must be "rationally related to a legitimate governmental purpose." *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1084 (9th Cir. 2015). A rule that is either non-neutral or not generally applicable is subject to strict scrutiny, which means that it must be "narrowly tailored" to serve a "compelling" governmental interest. *Kennedy*, 597 U.S. at 525.

**i. Defendant Is Not Entitled To Summary Judgment On Plaintiffs' Free Exercise Claims**

VTA argues as a threshold matter that following the Ninth Circuit's decision in *Detwiler v. Mid-Columbia Medical Center*, 156 F.4th 886 (9th Cir. 2025), Plaintiffs cannot show any issue of fact as to whether they sincerely hold religious beliefs in conflict with the vaccine mandate. The Court disagrees.

In *Detwiler*, the Ninth Circuit addressed whether a plaintiff alleged a "bona fide religious belief" sufficient to state a claim for failure to accommodate under Title VII. 156 F.4th at 892–94. "[A] plaintiff fails to state a prima facie case if the belief motivating her accommodation request is not, in fact, religious." *Id.* 156 F.4th at 894. The Ninth Circuit held that "[a] plaintiff seeking a religious exemption must plead a sufficient nexus between her religion and the specific belief in conflict with the work requirement." *Id.* at 895. Drawing on Supreme Court guidance in the First Amendment context, the Ninth Circuit concluded that although "a plaintiff need not establish her belief is consistent, widely held, or even rational," "[i]nvocations of broad, religious tenets cannot, on their own, convert a secular preference into a religious conviction." *Id.* Thus, "references to generic religious principles cannot transform a specific secular preference into a basis for a

[2] Plaintiffs suggest that *Smith* was based on ideas that are "ripe for rejection by the Supreme Court in an appropriate case." Reply at 3. To state the obvious, the case remains controlling Supreme Court precedent, and Plaintiffs' counsel's musings about the decision's wisdom or future are entirely irrelevant. Moreover, the idea that all of us have a fundamental obligation to follow valid and neutral laws of general applicability is hardly radical: instead, it reflects the common-sense premise that our society would break down if everyone could routinely choose to opt out of following those laws. *See Wisconsin v. Yoder*, 406 U.S. 205, 215–16 (explaining that "the very concept of ordered liberty precludes allowing every person to make his own standards on matters of conduct in which society as a whole has important interests").

religious discrimination claim." *Id.*at 890. The Ninth Circuit cautioned that its holding "does not direct lower courts to examine the sincerity or the reasonableness of a belief." *Id.* at 895. Nonetheless, in assessing a plaintiff's claim, "a district court must make a determination about the source of a belief to examine a plaintiff's prima facie case." *Id.* at 896.

Here, VTA argues that *Detwiler*'s standard applies with equal force to Plaintiffs' burden on their Free Exercise claims to establish that they sincerely hold a religious belief inconsistent with the vaccination requirement. Cross Mot. at 9–11. VTA categorizes Plaintiffs into two groups: those who claimed that a "body temple" belief conflicted with the vaccine requirement, and those who claimed that their religious beliefs about the use of fetal cells in vaccine development conflicted with that requirement. VTA asserts that following *Detwiler*, the Court "need not accept entirely conclusory assertions of religious belief," and that the remaining Plaintiffs fail to establish sincerely held religious beliefs and therefore "do not merit constitutional protections for religion." Cross Mot. at 10 (citing *Detwiler*, 156 F.4th at 894).

The Court agrees that to ultimately succeed on their Free Exercise claim, Plaintiffs must demonstrate that their sincerely held religious beliefs conflicted with the vaccine requirement. The Supreme Court's First Amendment jurisprudence guides the Court's analysis of this issue. Determining whether a plaintiff holds a sincerely held religious belief is "a difficult and delicate task," *Thomas v. Rev. Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 714 (1981). But a defendant is entitled to probe that issue. *See Frazee v. Illinois Dep't of Emp. Sec*., 489 U.S. 829, 833 (1989) (Free Exercise Clause only protects religious beliefs that are sincerely held and not secular beliefs, and "States are clearly entitled to assure themselves that there is an ample predicate for invoking the Free Exercise Clause"); *see also Yoder*, 406 U.S. at 215 ("A way of life, however virtuous and admirable, may not be interposed as a barrier to reasonable state regulation . . . if it is based on purely secular considerations; to have the protection of the Religion Clauses, the claims must be rooted in religious belief."). The Ninth Circuit has echoed this principle, holding that it is "incumbent on the courts to ensure that a free exercise claim is granted only when the threatened belief is religious in nature." *Callahan v. Woods*, 658 F.2d 679, 685 (9th Cir. 1981); *see also Walker v. Beard*, 789 F.3d 1125, 1138 (9th Cir. 2015) (observing that generally, in the context of a

prisoner's First Amendment claims, "a plaintiff will have stated a free exercise claim if: (1) the claimant's proffered belief [is] sincerely held; and (2) the claim [is] rooted in religious belief, not in purely secular philosophical concerns." (internal quotations and citations omitted)). These cases also demonstrate that once a plaintiff establishes that he has a sincerely held religious belief, he must also show some connection between that belief and the way it purportedly was burdened by government action. *See Callahan*, 658 F.2d at 686 (observing, after finding the plaintiff's beliefs to be sincerely held and religious in nature, that "the appropriate next course [] is to determine the extent to which [those] protected beliefs were burdened by the government's regulations"). *Detwiler* is the latest case to affirm these principles (albeit in the Title VII context), requiring at the pleading stage that a plaintiff "connect the requested exemption with a truly religious principle" by alleging a "sufficient nexus between her religion and the specific belief in conflict with the workplace requirement." *Detwiler*, 156 F.4th at 895.

With these principles in mind, the Court considers whether the remaining Plaintiffs have proffered sufficient evidence of a sincerely held religious belief to create a triable issue of fact as to their Free Exercise claims.

**a. Body Temple Beliefs (Plaintiffs Rolland, Bircher, Poythress, and Kennedy)**

Defendant argues that four of the remaining Plaintiffs fail to show a triable issue of fact because their exemption requests were based on "broad invocations" of prayer and/or the belief that their body was the temple of the Holy Spirit. Cross Mot. at 8. Based on the record before it, however, the Court finds that at least one genuine dispute of material fact as to whether Plaintiffs' asserted religious beliefs were sincerely held precludes summary judgment.

Each of these Plaintiffs articulated "facially religious objections grounded in Biblical teachings." *See Eshom v. King Cnty.*, 812 F. Supp. 3d 1190, 1199 (W.D. Wash. 2025). For example, Mr. Rolland's exemption request cited various passages of scripture (including Exodus 15:26) and explained that, consistent with his religious beliefs, he had not taken pain medications or the flu vaccine. *See* Dkt. No. 77-3 ("Rolland Decl.") ¶ 13, Ex. C at 16. Mr. Rolland also avers that he "ha[s] a deeply held religious belief that my body is a temple of the Holy Spirit, as stated in

1 Corinthians 6:19," which "forms the foundation of my approach to healthcare and medical interventions." *Id.* ¶ 4. Mr. Bircher similarly stated in his exemption request that he did not "want to receive any COVID related vaccine because [his] body is the temple of God under the authority of Jesus Christ our Savior," citing passages from Corinthians, Psalms, and Philippians. Dkt. No. 77-10 ("Bircher Decl.") ¶ 10, Ex. A at 9.

Mr. Poythress and Mr. Kennedy rely on similar evidence to support their claims. Mr. Poythress' religious exemption request invoked Psalm 118:8, explaining that "[a]s a child reading the Bible, this verse sealed my faith in scripture [and] the church," and cited Title VII of the Civil Rights Act. Dkt. No. 77-4 ("Poythress Decl.") ¶ 8, Ex. A at 8. Mr. Kennedy attests that he is a Seventh Day Adventist and that his "religious beliefs are deeply rooted in [his] understanding of the body as a temple for God's spirit," and that these beliefs guide his healthcare decisions. Dkt. No. 77-11 ("Kennedy Decl.") ¶¶ 2, 4, 6–8. Mr. Kennedy's exemption request pointed to these beliefs, stating: "I believe the creator gives one body then judgment. My body is a tabernacle for his spirit. I keep it clean. I do not smoke. I do not drink. I do not take drugs. I do not eat pork. I do not tattoo. I am being raped by being forced to vaccinate[.]" Kennedy Decl. ¶ 15, Ex. A at 8.[3]

[3] In their briefing, the parties dispute whether Mr. Kennedy's beliefs are rooted in Seventh Day Adventist doctrine, and whether he ever notified VTA of that belief. Cross Mot. at 8; Cross Opp. at 11; Cross Reply at 12. Plaintiffs' opposition refers to "RJN #2," *see* Cross Opp. at 11, but no such request for judicial notice was ever filed on the docket. Plaintiffs have filed only one request for judicial notice of briefs filed in *Detwiler* concerning the petition for rehearing *en banc*. Dkt. No. 164. Although those materials may be judicially noticeable, the Court declines the request for judicial notice because they are unnecessary to the determination of the present motion. *See Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) ("Judicial notice of legislative facts . . . is unnecessary."); *Lathan v. Ducart*, No. 16-16551, 2017 WL 3976705, at *1 (9th Cir. June 16, 2017) (denying request for judicial notice of "documents filed in the district court or orders entered by the district court, or of statutes, regulations, or published opinions" as unnecessary). Additionally, the Ninth Circuit has since considered and denied the request for rehearing *en banc*. *Detwiler v. Mid-Columbia Med. Ctr.*, 172 F.4th 1072 (9th Cir. 2026).

To the extent Plaintiffs seek judicial notice of the information hyperlinked in their opposition brief regarding Seventh Day Adventist beliefs, they have not met the standard to do so, and the Court denies that request as well. *Newman v. San Joaquin Delta Cmty. Coll. Dist.*, 272 F.R.D. 505, 516 (E.D. Cal. 2011) ("The party requesting judicial notice bears the burden of persuading the court that the particular fact is not reasonably subject to dispute and is capable of immediate and accurate determination by resort to a source whose accuracy cannot reasonably be questioned." (internal quotation omitted)). In any event, Mr. Kennedy expressly attested to his Seventh Day Adventist beliefs in his declaration supporting Plaintiffs' initial motion for summary judgment. *See generally* Kennedy Decl.

Making all reasonable inferences in Plaintiffs' favor at this stage, a factfinder could conclude that these Plaintiffs asserted beliefs that are sincerely held and religious in their own scheme of things. *See U.S. v. Seeger*, 380 U.S. 163, 184 (1965). This is enough for these claims to survive summary judgment.[4]

Defendant counters by pointing to evidence that it contends would lead a factfinder to conclude that the asserted beliefs were not sincerely held. But at summary judgment, the Court must view the evidence in the light most favorable to the non-moving party, and it may not resolve credibility determinations or weigh competing evidence. *Anderson*, 477 U.S. at 255. "Whether Plaintiffs' professed religious concerns were sincere or merely post-hoc rationalizations for secular concerns presents precisely the type of factual dispute that courts may not resolve on summary judgment." *Eshom*, 812 F. Supp. 3d at 1201. And "[i]t is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds." *Hernandez v. Comm'r*, 490 U.S. 680, 699 (1989). *See also Thomas*, 450 U.S. at 714 ("the resolution of [whether a belief is religious] is not to turn upon a judicial perception of the particular belief or practice in question; religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection."). Instead, under the circumstances presented here, "[t]he legitimacy of these faith-based concerns are factual and credibility issues for the jury—not the Court." *Piccolo v. Mayo Clinic*, No. CV-22-02007-PHX-DJH, 2025 WL 821773, at *8 (D. Ariz. Mar. 13, 2025) (citing *Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1176, n.3 (9th Cir. 2021) ("We may not . . . question the legitimacy of [Plaintiff's] religious beliefs regarding COVID-19 vaccinations.")); *see also Detwiler*, 172 F.4th at 1081 (Forrest, J., dissenting) (recognizing that "[a]n alleged belief can

[4] VTA seemingly interprets *Detwiler* to reject any invocation of a body temple belief as insufficient to establish a sincerely held religious belief. The Court finds it inaccurate to read *Detwiler* that broadly. The plaintiff in *Detwiler* invoked a body temple belief, as well as Christian beliefs against abortion, and her employer accepted these as sincerely held religious beliefs in conflict with the vaccine mandate. 156 F.4th at 890–91. It was the plaintiff's accompanying concern about carcinogenic ingredients in vaccine testing that the Ninth Circuit deemed "personal and secular." *Id.* at 895. Unlike the plaintiff in *Detwiler* or cases following it, Plaintiffs here have done more than broadly invoke religious tenets or prayer alone in articulating religious beliefs they contend are in conflict with the vaccination requirement.

be proven insincere as a matter of evidence"). Accordingly, the Court denies VTA's motion for summary judgment as to these Plaintiffs' Free Exercise claims to the extent the motion is based on their purported failure to identify evidence from which a factfinder could conclude that they sincerely held a religious belief that conflicted with the vaccination mandate. Of course, whether a factfinder will find Plaintiffs' position credible or persuasive as a factual matter is an issue for a later stage in the case, and the Court does not express any view here.

**b. Fetal Cell Group (Plaintiffs Rodriguez, Sanchez, and Mena)**

The Court finds that the Free Exercise claims of the remaining Plaintiffs—Mr. Rodriguez, Ms. Sanchez, and Ms. Mena—also survive VTA's motion for summary judgment. Here too, factual issues exist as to whether each sincerely held a religious belief inconsistent with the mandate. Each of these Plaintiffs cited opposition to the use of fetal cells in vaccine development as incompatible with specific scripture, articulating a conflict with the vaccination mandate. *See* Dkt. Nos. 77-7 ("Rodriguze Decl.") ¶ 17, Ex. A at 10 (Mr. Rodriguez's exemption request, referencing "Abortion & Fetal 'therapy'" in vaccine development as incompatible with his religious beliefs), 77-9 ("Mena Decl.") ¶ 13, Ex. A at 8 (Ms. Mena's exemption request, expressing her belief that the vaccine was developed using aborted fetal cells and that, as a Christian opposed to abortion, she could not "use any product that takes its origin in abortion"), 77-13 ("Sanchez Decl.") ¶ 21, Ex. A at 12 (Ms. Sanchez's exemption request, explaining that she believes the vaccines were developed from "fetal stem cells," and receiving the vaccine "would constitute a complicit action in the act of abortion," which she believes is "strictly prohibited by the Bible.").[5] This is sufficient at this stage to state a religious objection to COVID-19 vaccination. *See Callahan,* 658 F.2d at 685–86; *see also Detwiler*, 156 F.4th at 896 n.2.

VTA argues that these Plaintiffs' claims "fail on sincerity or process grounds." Cross Mot.

[5] The fact that these Plaintiffs' assertions about the use of fetal cells may be factually unsubstantiated is not a permissible basis for granting summary judgment against them on their claims. *See Keene v. City & Cnty. of San Francisco*, No. 22-16567, 2023 WL 3451687, at *2 (9th Cir. May 15, 2023) (remanding a COVID vaccine case where the plaintiff asserted a religious conflict based on supposed fetal cell lines in the vaccine because "it seem[ed] that the district court erroneously held that Appellants had not asserted sincere religious beliefs because their beliefs were not scientifically accurate.").

at 8. But this argument again invites the Court to engage in credibility determinations that are not appropriate at the summary judgment stage, and does not acknowledge the record showing that each of these Plaintiffs cited a specific religious belief they said conflicted with the mandate. *See Bator v. State of Hawaii*, 39 F.3d 1021, 1026 (9th Cir. 1994); *see also Detwiler*, 156 F.4th at 895 (cautioning that the Ninth Circuit's holding "does not direct lower courts to examine the sincerity or the reasonableness of a belief."). Accordingly, the Court denies VTA's motion for summary judgment as to these Plaintiffs' Free Exercise claims to the extent the motion is based on Plaintiffs' purported failure to show they held a bona fide religious belief at odds with the vaccine requirement. The Court again does not express any view here as to whether a reasonable factfinder would ultimately find Plaintiffs' position credible or persuasive.

**ii. Plaintiffs Are Not Entitled to Summary Judgment On Their Free Exercise Claims**

Plaintiffs also move for summary judgment on the Free Exercise claims, arguing the religious exemption policy was non-neutral and not generally applicable. *See* Mot. at 4–10.[6] But the Court finds that basic disputes of fact regarding the details of the policy preclude summary judgment in their favor.

**a. Neutrality**

"Starting with neutrality, '[a] government policy will not qualify as neutral if it is specifically directed at religious practice.'" *Bacon v. Woodward*, 104 F.4th 744, 751 (9th Cir. 2024) (citing *Kennedy*, 597 U.S. at 526 (cleaned up)). "A policy can fail this test if it discriminates on its face, or if a religious exercise is otherwise its object." *Id.* And "[a] government policy will fail the general applicability requirement if it 'prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way,' or if it provides 'a mechanism for individualized exemptions.'" *Kennedy*, 597 U.S. at 526 (quoting *Fulton v. City of Philadelphia*, 593 U.S. 522, 533–34 (2021)); *accord Fellowship of*

---

[6] Plaintiffs argue that they are entitled to summary adjudication on the element of "state action" for their First Amendment claims. Mot. at 9. "VTA does not dispute that it is a state actor." Opp. at 10 n.1. Accordingly, the Court **GRANTS** Plaintiffs' motion for summary adjudication on the state action element.

*Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 686 (9th Cir. 2023).

In its prior order, the Court found that VTA's vaccine mandate policy is facially and operationally neutral. *Rodriguez I*, 2024 WL 4778049, at *4. Plaintiffs now argue that VTA's "religious exemption policy," as opposed to its "vaccination mandate policy," is non-neutral and not generally applicable, triggering strict scrutiny. Mot at 4–10. Plaintiffs argue that the "VTA's religious exemption policy is found summarized in three (3) slides." Mot. at 5 (citing Dkt. No. 144-1, Ex. A). The thrust of Plaintiffs' motion relies on this exhibit to argue that VTA used criteria that impermissibly discriminated against some religious exemption requests. Mot. at 4–10.

Based on the record before it, however, the Court concludes that fundamental questions remain as to the exact contours of VTA's vaccine exemption policy. The three slides that Plaintiffs contend constitute the "religious exemption policy" appear to be part of a larger slide deck detailing a broader exemption process. Lending support to this conclusion, the slides Plaintiffs submit begin by addressing "Group C," without any reference to the "Group A" or "Group B" that presumably preceded these slides. The Court therefore finds that the more likely inference is that Plaintiffs had a general exemption process for its vaccine mandate that covered multiple kinds of exemption requests (including, for example, medical- or disability-based exemptions), not solely a religious exemption process. Additionally, the first two of these slides appear to list examples of scenarios that the VTA might encounter as it evaluated religious exemption requests. The document does not say—or suggest—that VTA followed up only as to certain assertions of religious beliefs but not others.[7] But in any event, the partial document does not conclusively establish what actually happened in practice.[8]

---

[7] The last slide of this deck is somewhat unclear. It states that "Shaw HRC will approve Clarification forms received based on previously discussed criteria." Dkt. No. 144-1 at 3. This includes "Consistent application of beliefs" "regarding fetal cells" and "against all preventative medicine because [VTA employees seeking religious exemption] see that as 'changing' their body." *Id.* It also includes instances where "God told them directly not to take this specific vaccine." *Id.* To the extent that this slide indicates that VTA accepted some, but not all, religious exemption requests at face value, it arguably could constitute a facially non-neutral policy. But this is a question for trial, because the parties dispute the basic facts of how the vaccine exemption process even worked in practice.

[8] Rather than supplying the full record, VTA argues that the Court should not consider this document at all. Opp. at 10. VTA asserts that Exhibit A to the Reinach Declaration, the slide

At bottom, the parties fundamentally dispute what policy governed the VTA's exemption process. Setting aside the slide deck, Plaintiffs assert in their reply that a "blueprint" document guided the religious exemption process. Reply at 7–8 (referencing Dkt. No. 144-3, Ex. C at 5–6).[9] They argue that the "blueprint" is facially non-neutral because it expressly invited the VTA committee to ask applicants with certain beliefs for additional clarification about the sincerity of those beliefs. *Id.* VTA, for its part, argues that it was not the blueprint document but "EEOC guidance that governed [its religious exemption] process," Opp. at 11,[10] and it presents testimony

deck that Plaintiffs offer as the purported "religious exemption policy," is not authenticated and therefore cannot support Plaintiffs' motion. *Id.* Plaintiffs respond with evidence that Exhibit C to the Reinach Declaration was authenticated by VTA's HR representative Cassandra Leventon in her deposition. Reply at 7 (citing Dkt. No. 144-3, Ex. C). Plaintiffs' reply relies on Exhibit C to make further argument about a "blueprint" document that resembles—but does not duplicate—Exhibit A to the Reinach Declaration. And Plaintiffs point to no testimony authenticating Exhibit A. Although the "blueprint" document in Exhibit C contains information similar to the "policy" document at Exhibit A, the Court agrees that Plaintiffs have not properly authenticated Exhibit A. But regardless, based on the entirety of the record, factual issues about what exactly the policy was preclude summary judgment on this issue.

[9] This "blueprint" document appears to be an email soliciting feedback, not a clear reflection of a final policy. But if it accurately reflects how VTA eventually handled religious exemption requests, VTA would face significant constitutional hurdles. For example, for "Criteria #4," which addresses instances where an employee stated that their "religion says they have a right to choose/they have a right to follow their conscious [sic]," VTA's senior human resources analyst wrote in an email that VTA would "[d]eny if the employee cannot show where the religion says so in writing." Dkt. No. 144-3 at 5–6. This is the type of requirement that courts have found to be flatly unconstitutional. *See Damiano v. Grants Pass Sch. Dist. No. 7*, 140 F.4th 1117, 1155 (9th Cir. 2025) ("[I]n the context of Free Exercise claims, it is well-established that an individual may sincerely hold a religious belief that is not reflected in a biblical passage or scripture."); *Hobbie v. Unemployment Appeals Comm'n of Fla.*, 480 U.S. 136, 144 n.9, (1987) ("So long as one's faith is religiously based at the time it is asserted, it should not matter, for constitutional purposes, whether that faith derived from revelation, study, up-bringing, gradual evolution, or some source that appears entirely incomprehensible.").

[10] VTA asks the Court to take judicial notice of these EEOC documents. Dkt. No. 146. Federal Rule of Evidence 201 allows a court to take judicial notice of facts that are "not subject to reasonable dispute" because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Under this rule, "[j]udicial notice is appropriate for records and reports of administrative bodies." *United States v. 14.02 Acres of Land More or Less in Fresno Cnty.*, 547 F.3d 943, 955 (9th Cir. 2008) (quotations omitted). But "[j]ust because [a] document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018). Thus, when taking judicial notice of documents, a court should "identify . . . which fact or facts it is noticing from" the documents. *Id.* The Court therefore takes judicial notice of the existence of these documents. But to the extent that VTA seeks to show that it actually relied on and applied this EEOC guidance in its exemption process, it will have to prove up that assertion at trial.

that the VTA review committee sought to evaluate whether an employee's religious belief conflicted with the vaccine mandate. *See* Dkt. No. 62-1, Exhibit C at 88:2–7. In other words, it sought to understand whether the employee had a sincerely held belief that was rooted in religion and that conflicted with the vaccine requirement. *See Frazee*, 489 U.S. at 833; *Callahan*, 658 F.2d at 686. Following up with an employee to ensure that his or her exemption request is based on a sincerely held religious belief is not inherently unlawful: it is necessary to ensure that the Free Exercise Clause is not transformed into "a blanket privilege" for plaintiffs "'to make [their] own standards on matters of conduct in which society as a whole has important interests.'" *Africa v. Com. of Pa.*, 662 F.2d 1025, 1031 (3d Cir. 1981) (quoting *Yoder*, 406 U.S. at 215–16); *see also Detwiler*, 156 F.4th at 897.

Plaintiffs rely on *Does 1-11 v. Board of Regents of University of Colorado*, 100 F.4th 1251, 1269 (10th Cir. 2024), and *UnifySCC v. Cody*, 2022 WL 2357068 (N.D. Cal. June 30, 2022), to assert that the blueprint "is a policy/procedure that is clearly subject to the First Amendment." Reply at 8. But in those cases, the parties did not dispute the contents of the policy that governed the accommodations process. *See Does 1-11*, 100 F.4th at 1269–79 (separately analyzing a "September 1 Policy" and "September 24 Policy," neither of which was in dispute); *Cody*, 2022 WL 2357068, at *9–*10 (separately analyzing the County's vaccination mandate and accommodations policies, and finding the latter operationally non-neutral because it was undisputed that it prioritized transfer requests from employees in high-risk roles who had medical or disability exemptions over similarly situated employees seeking religious exemptions). Here, by contrast, there is a fundamental factual dispute regarding the details of what policy actually governed the exemption process. Thus, considering the record in the light most favorable to the nonmoving party, there are material issues of fact as to whether the exemption policy was facially or operationally neutral.

**b. General Applicability**

"[A] government policy will fail the general applicability requirement if it 'prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way,' or if it provides 'a mechanism for individualized exemptions.'" *Bacon*,

United States District Court
Northern District of California

104 F.4th at 751 (quoting *Kennedy*, 597 U.S. at 526). "Although '[t]he mere existence of an exemption that affords some minimal governmental discretion does not destroy a law's general applicability, a 'formal system of entirely discretionary exceptions' does violate the general applicability requirement." *Rodriguez I*, 2024 WL 4778049, at *4 (quoting *Stormans*, 794 F.3d at 1082, and then *Fulton*, 593 U.S. at 536).

Here, the same factual issues precluding summary judgment on Plaintiffs' neutrality arguments also preclude it as to the general applicability issue. Fundamentally, Plaintiffs have not adduced uncontested evidence about the operation of VTA's religious exemption policy. VTA submits testimony indicating that the exemption process sought to understand the basis of employees' claims that "due to their religious beliefs they are prevented from getting the vaccine." Dkt. No. 62-1, Ex. C at 88:2–4. This kind of inquiry is not inherently impermissible. *See Callahan*, 658 F.2d at 684–86; *see also Detwiler*, 156 F.4th at 895.

Not much about the factual record has changed since the Court's prior order. As the Court previously noted, the record reflects that VTA's process in evaluating exemptions may or may not have entailed the kind of discretion required to trigger strict scrutiny. *Rodriguez I*, 2024 WL 4778049, at *5 (observing that, under recent Supreme Court precedent, "an exemption process merits strict scrutiny when it 'invites' one individual to exercise 'sole discretion' in determining 'which reasons for not complying with the policy are worthy of solicitude.'" (quoting *Fulton*, 593 U.S. at 537)). That remains true on the parties' supplemental motions for summary judgment. The record reflects that the VTA committee's process may have involved "enough individualized discretion to 'permit discriminatory treatment of religion or religiously motivated conduct.'" *Rodriguez I*, 2024 WL 4778049, at *5 (quoting *Stormans*, 794 F.3d at 1082). For example, if the "blueprint" document became VTA's official policy, it and other evidence in the record could "suggest that the committee evaluated the sincerity of applicants' religious beliefs based on the perceived consistency of applicants' statements and 'proof of consistent adherence over [a] long period of time.'" *Id.* (citing Dkt. No. 80-1, Exs. C, M). A reasonable factfinder could conclude that this approach impermissibly "passe[d] judgment upon or presuppose[d] the illegitimacy of religious beliefs and practices." *Masterpiece Cakeshop v. Colorado C.R. Comm'n*, 584 U.S. 617,

638 (2018).

On the other hand, VTA has presented evidence from which a reasonable factfinder could conclude that the exemption process was "tied directly to limited, particularized, business-related, objective criteria" and therefore "d[id] not create a regime of unfettered discretion that would permit discriminatory treatment of religion." *Stormans*, 794 F.3d at 1082. As the Court previously noted, "evidence in the record suggests that the committee frequently denied exemptions for the religiously-neutral reason that applicants did not answer the committee's questions or participate in the committee's process." *Rodriguez I*, 2024 WL 2778049, at *5. The record suggests, for example, that this religiously neutral reason was cited as the basis for the denial of Mr. Rodriguez's and Mr. Sanchez's exemption requests. Dkt. No. 80-1, Ex. M (stating the "Denial Reason" for their requests was, respectively, "Refusal to answer questions" and "Did not want to answer the questions"). Drawing all reasonable inferences in favor of VTA, there remains a genuine dispute of fact as to what discretion the VTA committee exercised and how, and thus also as to the general applicability of both the vaccine mandate policy and the religious exemption policy. The Court therefore denies Plaintiffs' motion for summary judgment as to their claims arising under the Free Exercise Clause.

**B. Establishment Clause**

The First Amendment states that "Congress shall make no law respecting an establishment of religion." U.S. Const. amend. I. Both Plaintiffs and VTA argue that they are entitled to summary judgment on Plaintiffs' Establishment Clause claim. The parties also dispute the standard that should govern this claim. Plaintiffs rely on *Larson v. Valente*, 456 U.S. 228, 244 (1982), for the blanket principle that the Establishment Clause supports a claim whenever the government "'aid[s] one religion' or 'prefer[s] one religion over another.'" Reply at 11 (citing 456 U.S. at 246). Plaintiffs argue that the Court must apply strict scrutiny to VTA's vaccine exemption policy, asserting that the "blueprint was a policy or practice that concerned religious beliefs or religious exercise, and subject to the Establishment Clause." Mot. at 11.

As an initial matter, the Court does not read *Larson* as broadly as Plaintiffs do. "*Larson* teaches that, when it is claimed that a denominational preference exists, the initial inquiry is

whether the law facially differentiates among religions." *Hernandez*, 490 U.S. at 695. In other words, *Larson* only applies if Plaintiffs can show that VTA had a policy that facially differentiated among religions such that it favored some over others. "If no such facial preference exists," under prior Supreme Court precedent, courts would "proceed to apply the customary three-pronged Establishment Clause inquiry derived from *Lemon v. Kurtzman*, 403 U.S. 602 (1971)." *Id.* But as the Court noted in a prior order, recent Supreme Court precedent instructs that the *Lemon* test has been abandoned and that the Establishment Clause must be interpreted by "reference to historical practices and understandings" of the challenged conduct. *Kennedy*, 597 U.S. at 510; *see also Town of Greece, N.Y. v. Galloway*, 572 U.S. 565, 577 (2014) (framing the Court's inquiry as determining "whether the prayer practice in the town of Greece fits within the tradition long followed in Congress and the state legislatures").

Plaintiffs' Establishment Clause claim therefore faces a fork in the analysis. If they are able to establish that VTA had a religious exemption policy that facially differentiated among religions such that it preferred certain religions over others, the policy would be subject to strict scrutiny under *Larson*. *See Cath. Charities Bureau, Inc. v. Wisconsin Lab. & Indus. Rev. Comm'n*, 605 U.S. 238 (2025) (applying *Larson*'s standard to a facially non-neutral statute). If, on the other hand, Plaintiffs don't show that the policy was facially non-neutral, their claim would be analyzed under *Kennedy* with reference to "historical practices and understandings" regarding vaccination exemption policies. Depending on what the facts show, the Court might need to examine, for example, any relevant historical practices and understanding of policies that differentiated among bases claimed for an exemption. *See Kennedy*, 597 U.S. at 510; *see also UnifySCC v. Cody*, 2025 WL 215524, at *14 (N.D. Cal. Jan. 15, 2025) (noting and rejecting defendant's argument that its exemption process, which favored vaccine exemption requests based on disability over those based on religion, had a historical basis in "'preferential consideration' to disabled persons [that] has been permitted since at least the Civil War.").

Based on the record before it, and for the reasons discussed above, the Court finds that disputes of fact continue to exist with respect to how VTA's religious exemption process actually operated in practice. *See supra*. Accordingly, Plaintiffs are not entitled to summary judgment on

the Establishment Clause claims, because a factual dispute exists as to what the relevant policy even was.

As to VTA's motion for summary judgment, the Court finds that it also fails to meet its burden. Having held that factual issues preclude summary judgment in Plaintiffs' favor on the as-applied Establishment Clause claims, the Court finds that summary judgment is not warranted in Defendants' favor either.[11] To the extent that Plaintiffs can show that VTA's exemption process facially "discriminate[s] among religions," *Larson*, 456 U.S. at 252, such a policy would appear to express a "denominational preference" that would subject it to strict scrutiny. *See Cath. Charities*, 605 U.S. at 248. In short, identifying the correct standard of review continues to depend on what the facts ultimately show.

Additionally, Defendant does not appear to have identified the relevant historical analogue for analysis under *Kennedy* if that ends up being the applicable test. VTA asserts that its "vaccine policy is consistent with the Nation's historical tradition" because "vaccine mandates are among the most historically grounded exercises of governmental public health authority in American law." Opp. at 14. But whether the vaccination mandate was lawful as a general matter is not the issue. The issue is whether VTA distinguished some bases for exemptions from others, and if so, why. *See Texas Monthly, Inc. v. Bullock*, 489 U.S. 1, 20 (1989) ("There exists an overriding interest in keeping the government—whether it be the legislature or the courts—out of the business of evaluating the relative merits of differing religious claims. The risk that governmental approval of some and disapproval of others will be perceived as favoring one religion over another is an important risk the Establishment Clause was designed to preclude." (cleaned up and quotation omitted)).

**C. Governmental Immunity from Plaintiffs' FEHA Claims**

VTA also moves for summary judgment as to Plaintiffs' FEHA claims, arguing it is

[11] VTA revoked its COVID vaccine requirement, and with it the exemption process for the mandate, in November 2022. Thus, to the extent that Plaintiffs raise a facial challenge under the Establishment Clause to the vaccine mandate or the religious exemption policy, those claims are moot. *See Baker-Pacius v. Dep't of Educ. Of the City of New York*, 2026 WL 693521, at *5 (E.D.N.Y. Mar. 12, 2026) (finding a facial Establishment Clause challenge to the New York City Department of Education's vaccine mandate moot where the mandate had been revoked).

immune from liability for decisions intended to promote public health under California Government Code § 855.4. Cross Mot. at 13–14. Plaintiffs argue that § 855.4 immunity does not extend to ministerial decisions implementing public health policies. Cross Opp. at 13.[12] In supplemental briefing, they also assert that even if governmental immunity under § 855.4 shields VTA from damages, it does not bar their FEHA claims to the extent they seek injunctive or declaratory relief. *See* Dkt. No. 207. The Court rejects both of Plaintiffs' arguments.

The California Government Claims Act provides that "public entities are immune from [noncontractual] liability except as provided by statute . . . and that public entities are immune where their employees are immune, except as otherwise provided by statute." *Caldwell v. Montoya*, 10 Cal. 4th 972, 980 (1995). The purpose of the Act is to "'assur[e] . . . judicial abstention in areas in which the responsibility for basic policy decisions has been committed to coordinate branches of government[,]' because '[a]ny wider judicial review . . . would place the court in the unseemly position of determining the propriety of decisions expressly entrusted to a coordinate branch of government.'" *Greenwood v. City of Los Angeles*, 89 Cal. App. 5th 851, 863 (2023) (quoting *Johnson v. State of California*, 69 Cal. 2d 782, 793 (1968)).

As part of the Government Claims Act, Section 855.4 provides:

> (a) Neither a public entity nor a public employee is liable for an injury resulting from the decision to perform or not to perform any act to promote the public health of the community by preventing disease or controlling the communication of disease within the community if the decision whether the act was or was not to be performed was the result of the exercise of discretion vested in the public entity or the public employee, whether or not such discretion be abused.
>
> (b) Neither a public entity nor a public employee is liable for an injury caused by an act or omission in carrying out with due care a decision described in subdivision (a).

Cal. Gov't Code § 855.4. "By its plain language, section 855.4 . . . immunizes any decision relating to the control of the communication of disease that is the result of the discretion vested in

---

[12] Plaintiffs also assert that VTA waived this defense by not raising it in its Answer. Cross Opp. at 12. VTA separately moved for leave to file an amended answer to add this defense, which the Court granted. Dkt. Nos. 186, 199. The Court therefore addresses only Plaintiffs' arguments concerning the applicability of immunity for purportedly ministerial decisions.

United States District Court
Northern District of California

the public entity. Such a decision is immune, whether or not such discretion [was] abused." *City of Los Angeles v. Superior Court*, 62 Cal. App. 5th 129, 144 (2021) (internal quotations omitted). Thus, to establish immunity under § 855.4, VTA must show that "any injury resulting from its failure to accommodate Plaintiffs' religious beliefs [or resulting from its alleged harassment, retaliation, or discrimination based on those beliefs] was the consequence of a discretionary decision made in service of promoting the public health." *UnifySCC v. Cnty. of Santa Clara*, No. 22-CV-01019-BLF, 2026 WL 497573, at *3 (N.D. Cal. Feb. 23, 2026).

*Allos v. Poway Unified School District*, 112 Cal. App. 5th 822 (2025), recently considered the availability of § 855.4 immunity for FEHA claims related to the implementation of workplace COVID-19 policies. In *Allos*, a school district employee sued for failure to accommodate after her employer refused to allow her to work from home following a return to office mandate. *Id.* at 829. The plaintiff had several health-related concerns, including an asserted "vaccine allergy" which she contended was a disability that prevented her from working in person. *Id.* at 837. The Court of Appeal held that the district's "decisions concerning vaccine requirements" were protected by § 855.4 immunity, barring Plaintiff's FEHA claims because they stemmed from the district's discretionary decisions concerning the control of COVID-19. *Id.* at 834.

*Allos*' reasoning was applied to a COVID-19 vaccination mandate in *UnifySCC v. County of Santa Clara*. *See* 2026 WL 497573, at *4. There, several Santa Clara County employees filed a class action lawsuit against the County, asserting claims for violations of the First Amendment and failure to accommodate their religious rights under FEHA. *See UnifySCC v. County of Santa Clara*, 22-CV-01019-BLF, Dkt. No. 55 (Amended Complaint) ¶¶ 63–97. The plaintiffs were granted religious exemptions to the County's COVID-19 vaccination requirement, but were not permitted to work in person and were instead placed on administrative leave. 2026 WL 497573, at *1. The plaintiffs challenged this decision because they had previously been allowed to work in person so long as they masked and tested regularly for the virus, but that practice was no longer permitted after the County's vaccination mandate went into effect. *Id.* Finding *Allos* persuasive, the court held that to the extent that the plaintiffs' injuries stemmed from "the County's policy and implementation thereof, those injuries flow from the County's discretionary decisions made in

United States District Court
Northern District of California

service of promoting the public health." *Id.* at *4. For this reason, § 855.4 immunity barred the plaintiffs' FEHA claim.

The Court likewise finds here that § 855.4 immunity bars Plaintiffs' FEHA claims for damages. As in *Allos* and *UnifySCC*, Plaintiffs' FEHA claims stem from VTA's "discretionary, public-health-related decisions." *Id.* at *4. VTA proffers undisputed evidence that it implemented its vaccine mandate to "help prevent infection and transmission of COVID-19 within the workplace, at VTA facilities, and to members of the public who depend on VTA services." Dkt. No. 62-4, Ex. 6 at 12. It did so after "[t]he WHO, CDC, CDPH, and County Health [] determined that vaccination is the most effective way of preventing the spread of COVID-19, protecting against both transmission and serious illness or death." *Id.*[13]; *see also* Dkt. No. 62-1, Ex. A at 20:25–21:5 ("At some point, the decision was made that we would have a mandatory vaccine because, based on available information, that was the safest way to keep the majority of our . . . employees, primarily, well and alive."). The vaccine policy further indicates that VTA's "Human Resources Department, or designee, will review all exemption requests on a case-by-case basis and engage in an interactive process with individuals who request an exemption" from the vaccine policy. Dkt. No. 62-4, Ex. 6 at 14. And VTA submits evidence showing that it acted with due care: "it engaged Shaw HR Consulting, developed criteria based on EEOC and DFEH guidance, created a review committee, provided clarification opportunities, and offered an appeal process." Cross Mot. at 14; *see also* Dkt. No. 62-1, Ex. D at 20:15-28:10; 39:21-25; Dkt. No. 62-4, Ex. 6 at 20; Dkt. No. 62-1, Ex. B at 26:7-27:12 and Ex. C at 11:5-13; Dkt. No. 62-4, Ex. 49 at 107–11; Dkt. No. 62-1, Ex. A at 11:12–23, 30:1–6, 38:18–39:8.

Plaintiffs do not contest VTA's evidence or argument on these points. *See* Cross Opp. at 13–14. They argue only that § 855.4 does not immunize VTA from FEHA damages liability because VTA's decisions implementing its vaccination policy to evaluate religious exemptions were ministerial, not discretionary. *Id.* at 13; Dkt. No. 207 (refining Plaintiffs' arguments to assert

[13] "WHO" refers to the World Health Organization; "CDC" refers to the United States Center for Disease Control; "CDPH" refers to the California Department of Public Health; and "County Health" refers to the Santa Clara County Health Officer. Dkt. No. 62-4, Ex. 6 at 12.

United States District Court
Northern District of California

that if § 855.4 applies, it would bar claims for damages but not equitable or declaratory relief). In making this argument, Plaintiffs assert that VTA implemented its religious exemption policy under its mandatory legal duties under FEHA.[14]

The Court finds these arguments unpersuasive. As an initial matter, the Court agrees with the conclusion in *UnifySCC* that "FEHA liability does not override section 855.4's grant of immunity." *UnifySCC*, 2026 WL 497573 at *5. Plaintiffs' arguments echo those that were rejected by the courts in *UnifySCC* and *Allos*. *See UnifySCC*, 2026 WL 497573, at *4–*5 (addressing arguments by the plaintiffs that the "County is not immune from 'a mandatory duty required by FEHA to accommodate Plaintiffs' religious beliefs"); *see also Allos*, 112 Cal. App. 5th at 835 (rejecting similar arguments as "conclusory" where plaintiff "provide[d] no explanation of how PUSD's decisions were inconsistent with the duties allegedly violated."). The Court also rejects Plaintiffs' assertion that the California "Court of Appeal [has] squarely held that governmental discretionary immunity does not protect public entities from direct FEHA liability." Cross Opp. at 14. Plaintiffs rely on *DeJung v. Superior Court*, 169 Cal. App. 4th 533 (2008), and *Caldwell v. Montoya*, 10 Cal. 4th 972, 989 n.9 (1995), for this argument, but "[t]hose cases are inapposite because they concerned discretionary immunity for public employees under Section 820.2 and derivative immunity for public employers under section 815.2." *Jenkins v. Dep't of Justice*, No. F087260, 2025 WL 729659, at *4 (Cal. Ct. App. Mar. 7, 2025) (holding that Cal. Gov. Code § 855.6 granted a public entity immunity from FEHA discrimination claims).

Plaintiffs assert that although VTA may have immunity for implementing a vaccine policy, it is "not immune from how it handled mandatory FEHA religious exemptions to the policy." Cross Opp. at 13. But Plaintiffs have not identified any ministerial acts by VTA. Nor could they, because as one California Court of Appeal recognized, unlike an individual, "[a] public entity . . .

---

[14] VTA argues, and the Court agrees, that there is some tension between Plaintiffs' contentions about the level of discretion claimed with respect to the federal versus state claims. Plaintiffs have long argued that VTA exercised "absolute discretion" in implementing the religious exemption policy as part of its vaccination mandate, triggering strict scrutiny for Plaintiffs' federal claims. Dkt. No. 80 at 39. Plaintiffs now assert that VTA's decisions regarding the very same process were "ministerial," *i.e.*, mandatory. Plaintiffs may of course raise alternative theories of liability, but they have not plausibly identified any ministerial acts.

cannot inadvertently decide something. And absent a legal mandate to take a particular course of action, a public entity also cannot make a decision merely by following instructions." *Greenwood*, 89 Cal. App. 5th 851, 862. Here, the Court finds that the "determination of whether a particular accommodation could be approved goes to the heart of the public health policy at issue." *UnifySCC*, 2026 WL 497573, at *5 (citing *Greenwood*, 89 Cal. App. 5th at 864). As in *UnifySCC*, Plaintiffs do not dispute that their request to be exempt from the vaccination requirement "implicate[d] public health policy decisions." *Id.* Thus, the Court rejects Plaintiffs' argument that VTA's actions were ministerial. *Id.*[15]

Finally, Plaintiffs argue that their FEHA claims are not subject to summary judgment under § 855.4 because they also seek injunctive and declaratory relief, and that the Government Claims Act does not bar these forms of relief. Dkt. No. 207. Assuming without deciding that Plaintiffs are correct, the Court concludes that Plaintiffs would not be entitled to such relief on their FEHA claims. Undisputedly, VTA revoked its COVID vaccine mandate in November 2022. Any challenge to VTA's vaccination mandate and its accompanying religious exemption process is therefore moot. *See Schmidt v. City of Pasadena*, No. LA CV21-08769 JAK (JCX), 2024 WL 1640913, at *27 (C.D. Cal. Mar. 21, 2024) (dismissing claims for injunctive and declaratory relief as "remedies, not independent causes of action," but noting that even if sought as remedies, a request for such relief would be mooted by the Defendant's rescinding of its vaccination policy).

Accordingly, the Court **GRANTS** Defendant's motion for summary judgment as to Plaintiffs' FEHA claims, and **DENIES** Plaintiffs' motion for summary judgment as to those claims.

---

[15] Plaintiffs do not discuss the "due care" provision of § 855.4(b), and the Court concludes that they have not pointed to anything in the record that establishes any material dispute of fact on that basis. In their opposition to VTA's motion for leave to amend its answer to add an immunity defense, Plaintiffs argued that they needed additional discovery on this point. Dkt. No. 192 at 14. The Court gave Plaintiffs an opportunity to submit an offer of proof explaining what, if any, additional discovery was needed, Dkt. No. 199 at 6, but they did not file one. And as a practical matter, any argument that VTA did not act with due care in how it administered its religions exemption policy would amount to a claim that VTA misused its discretion in assessing Plaintiffs' exemption requests. But that discretion is exactly what § 855.4(a) immunizes.

United States District Court
Northern District of California

## IV. CONCLUSION

The Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's motion for summary judgment, Dkt. No. 143. Specifically, the Court **GRANTS** Plaintiffs' motion for summary adjudication as to the element of state action on their federal claims, and otherwise **DENIES** the motion. The Court also **DENIES** Plaintiffs' request for judicial notice, Dkt. No. 164.

The Court **GRANTS IN PART** and **DENIES IN PART** Defendant VTA's motion for summary judgment, Dkt. No. 145. Specifically, the Court **GRANTS** Defendant's motion for summary judgment as to Plaintiffs' FEHA claims, and otherwise **DENIES** the motion. The Court also **GRANTS** Defendant's request for judicial notice, Dkt. No. 146.

**IT IS SO ORDERED.**

Dated: 8/12/2026

Haywood S. Gill Jr.

HAYWOOD S. GILLIAM, JR.
United States District Judge